JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, minor D. W., appeals the trial court's ruling of delinquency for felonious assault.
{¶ 2} Defendant, his girlfriend, and another teenage couple had finished eating in the food court at Westgate Mall and were proceeding into the mall proper. At the Metabolife kiosk, they encountered P. S. (victim) talking with the clerk of the kiosk. The testimony of the defendant, victim, and various witnesses completely contradict each other regarding which boy was the aggressor.
{¶ 3} The two boys and all the witnesses agree that the boys had been in previous physical confrontations and were known to dislike each other. It is also undisputed that defendant struck the victim in the face with sufficient force to cause him to fall. Defendant made no further assault on victim.
{¶ 4} Defendant and his male friend ran away and the police caught them in the park across the street from the mall shortly thereafter. Defendant admitted to the police that he had struck the victim. The defendant's girlfriend also made a police report stating that he had struck the victim.
{¶ 5} The victim testified that, after getting up off the floor, he drove himself home and called his mother, to tell her he had been hit and his teeth were pushed in. He stated that he did not remember anything that happened between being hit and waking up at the hospital. His mother testified that when she got home her son's teeth were pushed in and his face was black and blue and swollen. Tr. at 31. She told him she was calling the police and to come downstairs. When he walked into the kitchen, he passed out, landing on his back. EMS took him to the hospital where he was admitted for two days.
{¶ 6} A week after the incident, he returned to the hospital for surgery on his face and jaw. He had three titanium plates put in his face, and his jaw was also wired shut. At the time of the January 2001 trial, his medical bills totaled over $30,000. He is permanently scarred from the surgery.
{¶ 7} Defendant was charged with felonious assault and held at a juvenile shelter for three months. After a trial held in two sessions, the court found him delinquent by reason of felonious assault. He was committed to an indefinite term with the Ohio Department of Youth Services with a minimum of one year and a maximum not to exceed his twenty-first birthday. This order was stayed and he was put on probation with the condition that he attend an anger management program and get a job to help pay the victim's medical expenses.
{¶ 8} Appellant states three assignments of error. For his first assignment of error, appellant states,
 {¶ 9} I. THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED [D] [W]'S RIGHT TO DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE 1 SECTION 10 OF THE OHIO CONSTITUTION WHEN MEDICAL RECORDS WERE ADMITTED INTO EVIDENCE OVER THE OBJECTION OF DEFENSE COUNSEL.
{¶ 10} At the beginning of the trial, the prosecutor stated that he would seek to admit certified copies of the medical records. When the court asked defense counsel if he stipulated to the medical records, he responded that he would stipulate only to [s]o much of the records that relate to his treatment. Anything else, hearsay statements alleging assault, those we'd ask be redacted from the statement. Tr. at 2. When the state rested its case, however, it failed to formally introduce the records into evidence. At the end of the trial, the defense pointed out that the records were not in evidence and requested that they not come in because they were never properly introduced. Allowing the records in for the limited purpose of the victim's injuries and treatment, the court stated: [the prosecutor] may not have used the magic language, but I think I'm going to accept them nonetheless, because I think they were stipulated to * * *. Tr. Jan. 16, 2001 at 63.[1] The court specifically noted that it would use the medical records to review the treatment the victim received. In fact, the prosecutor reminded the court at the end of trial that the stipulation was just for treatment and just for other medical purposes. Tr. at 63. He noted that the stipulation excluded anything regarding the act which caused the injuries. Id.
{¶ 11} Defendant objected to the introduction of the medical records because it violated appellant's rights to cross-examine witnesses against him, denying him a fair trial. Appellant's brief at 10. First, defendant fails to explain whom he would cross-examine. No witnesses were necessary once the medical records were stipulated to. He fails, moreover, to state specifically in what way this admission prejudiced his case. The defense attorney himself, when objecting to the admission of the records, admitted, we talked about there was not going to be any medical testimony * * * at the beginning of trial * * *. Tr. at 64. His only objection at this point is at some point in time, at the end of the state's case, they do have to move to admit [the records] into evidence. Tr. at 64.
{¶ 12} This court has previously explained the very high standard this court must satisfy to reverse a court on the admission of evidence:
 {¶ 13} The decision of whether or not to admit evidence rests within the sound discretion of the trial court. * * * A trial court's ruling concerning the admissibility of evidence will not be reversed on appeal absent a clear abuse of discretion which results in material adverse prejudice. * * * Even if a reviewing court would have reached a different conclusion concerning an evidentiary issue, this court will not simply substitute our judgment for that of the trial court. * * * To constitute a reversible abuse of discretion, the trial court's ruling:
 {¶ 14} Must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.
{¶ 15} Ahern v. Ameritech (2000), 137 Ohio App.3d 745, 773, quoting Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256, citations omitted.
{¶ 16} Because defendant did not demonstrate any prejudice arising from the admission of the medical records, which were certified and whose partial admission he stipulated to at the beginning of the case, we see no prejudice in their admission.
{¶ 17} Moreover, even without the medical records, there was more than enough evidence to support a finding of felonious assault.
{¶ 18} Felonious assault is defined in R.C. 2903.11 in part as follows:
 {¶ 19} (A) No person shall knowingly do either of the following:
 {¶ 20} (1) Cause serious physical harm to another. * * *
 {¶ 21} (D) Whoever violates this section is guilty of felonious assault, a felony of the second degree. * * *
{¶ 22} Serious physical harm to a person is defined in R.C.2901.01(A)(5) as any of the following:
{¶ 23} (a) * * *
 {¶ 24} (b) Any physical harm that carries a substantial risk of death;
 {¶ 25} (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 26} (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 27} (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
{¶ 28} * * * (Emphasis added.)
{¶ 29} This court has long held that [w]here injuries to the victim are serious enough to cause him or her to seek medical treatment, a jury may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5). State v. Wilson (Sept. 21, 2000), Cuyahoga App. No. 77115, 2000 Ohio App. LEXIS at *13. In the case at bar, not only did the victim seek medical treatment, he required two days of hospitalization and subsequent surgery. This information was provided by the victim in addition to being in the medical records.
{¶ 30} The trial court has broad discretion in the admission and exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere. State v. Hymore (1967), 9 Ohio St.2d 122, 127. Because the trial court did not err in permitting the late admission of the medical records into evidence and because the medical records were not necessary to make a finding of felonious assault, the first assignment of error is overruled.
{¶ 31} For his second assignment of error, appellant states,
 {¶ 32} II. THE TRIAL COURT VIOLATED [D] [W]'S RIGHT TO DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE 1 SECTION 16 OF THE OHIO CONSTITUTION AND JUVENILE RULE 29(E)(4) IN DENYING HIS MOTION FOR ACQUITTAL MADE AT THE CLOSE OF THE STATE'S EVIDENCE AS THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE AS TO THE ELEMENT OF SERIOUS PHYSICAL HARM.
{¶ 33} First, defendant claims that the trial court lacked sufficient evidence to support a finding of felonious assault at the close of the state's case and therefore should have granted his motion for acquittal.
{¶ 34} This court addressed the sufficiency standard in State v. Wilson (Sept. 21, 2000), Cuyahoga App. No. 77115, 2000 Ohio LEXIS 4295 at *11:
 {¶ 35} Sufficiency is a legal standard which is applied to determine whether the evidence admitted at trial is legally sufficient to support the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386 * * *. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. Id. at 390. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259 * * *, paragraph two of the syllabus. In essence, therefore, sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. Thompkins, supra, at 386.
{¶ 36} As previously noted, the elements of felonious assault are, first, that the defendant's assault caused serious physical harm to the victim and, second, that the defendant acted knowingly. We have already determined that there was sufficient evidence to support a finding of serious physical harm. Defendant does not challenge the only other element of the crime.
{¶ 37} In the case at bar, the defendant testified that he struck the victim, the victim testified that he was struck so hard that he had no memory for a period of time following the assault, and the victim's mother testified that her son's face was bruised and swollen and that he required hospitalization and surgery. This testimony, if believed, was sufficient to support a finding of felonious assault.
{¶ 38} The second assignment of error is overruled.
{¶ 39} For his third assignment of error, appellant states,
 {¶ 40} III. THE TRIAL COURT VIOLATED [D] [W]'S RIGHT TO DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE 1 SECTION 16 OF THE OHIO CONSTITUTION AND JUVENILE RULE 29(F)(1) WHEN IT ADJUDICATED HIM DELINQUENT OF FELONIOUS ASSAULT AT THE CLOSE OF ALL THE EVIDENCE.
{¶ 41} In this assignment of error, defendant argues that he acted in self-defense and that the state failed to prove that the blow to the victim's face was the cause of his injuries. This court has previously explained the elements of self-defense:
 {¶ 42} 1. that the accused was not at fault in starting the affray;
 {¶ 43} 2. that he had a bona fide belief that she [sic] faced imminent danger of death or great bodily harm;
 {¶ 44} 3. that his only means of escape was the use of such force; and
 {¶ 45} 4. that he violated no duty to retreat or avoid the danger.
{¶ 46} State v. Stubblefield (May 31, 2001), Cuyahoga App. No. 78361, 2001 Ohio App. LEXIS 2430 at *11.
{¶ 47} This court has held that it is proper and constitutionally permissible for the court to place the burden of proving self-defense upon the defendant. State v. Kirkland (1984), 18 Ohio App.3d 1, syllabus paragraph 3. Whereas defendant testified that he struck the victim because he was afraid [the victim] was going to beat [him] up again[,] the victim testified that defendant was the aggressor and started the altercation. [S]elf-defense is an affirmative defense * * *. State v. Allen (2000), Cuyahoga App. No. 76672, at 9, quoting State v. Panetti (1998), Cuyahoga App. No. 73044. In State v. Frost (1979), 57 Ohio St.2d 121 * * *, the Ohio Supreme Court upheld the constitutionality of requiring defendant to prove an affirmative defense by a preponderance of the evidence. Kirkland at 5. Given the conflicting testimony concerning the aggressor in this situation, the finder of fact could easily have decided that the defendant did not prove self-defense by a preponderance of the evidence.
{¶ 48} Defendant failed to support his assertion of self-defense in several ways. First, his argument that the victim was the aggressor is unpersuasive. The witnesses' testimony conflicted so much that it was impossible to determine how this altercation started.
{¶ 49} Moreover, the courts have found defendants guilty even in fights which were mutual or were started by the victim. If the fight had been mutual, defendant might still have been liable for his actions in injuring the victim:
 {¶ 50} Where two persons agree to fight each other, * * * each may be subject to criminal prosecution for assault; and where the harm visited upon one of the fighters constitutes serious physical harm, the fact that the fight was begun by mutual consent is not a defense, in law, to a charge of felonious assault brought pursuant to R.C. 2903.11(A)(1).
{¶ 51} State v. Dunham (1997), 118 Ohio App.3d 724, syllabus.
{¶ 52} If the victim had been the aggressor, defendant would have been justified only in using reasonable force to repel an attack.
 {¶ 53} The law does not require of the defendant any nice distinction as to the least amount of force necessary, but whether the force used was excessive is a question for the trier of facts * * *.
 {¶ 54} The true question of fact to be ascertained is the bona fide belief of defendant as to his imminent peril.
{¶ 55} State v. McLeod (1948), 82 Ohio App. 155, 157. In the case at bar, defendant merely stated that the victim pushed him on the shoulder in the middle of a shopping mall. He provided no evidence of imminent peril justifying his response.
{¶ 56} Even if the victim had been the aggressor in a non-public place, defendant still had a duty to retreat if he could. Although [o]ne may use such force as the circumstances require in order to defend against danger which one has good reason to apprehend[,] State v. Fox (1987), 36 Ohio App.3d 78, 80, citing McLeod, the trier of fact could find the appellant was no longer in imminent danger of death or great bodily harm and without a means of escape when he chose to continue the confrontation.
{¶ 57} In State v. Matthews (2001), Licking App. No. 01CA0047, 2001 Ohio App. LEXIS 4931, at *8, the court upheld a conviction of aggravated assault with the following analysis:
 {¶ 58} * * * faced with the danger of confrontation, [defendant] chose to stay and further participate in the altercation instead of retreating to avoid danger. Because he was in an open yard, it would seem perfectly reasonable for a jury to assume that he had many means of escape aside from the use of force.
{¶ 59} Further, defendant failed not only to prove self-defense, but also to demonstrate that he did not violate a duty to retreat. In Stubblefield, the defendant testified that he blocked [the victim]'s punch then hit [the victim] and left because he thought that [the victim]'s friends were going to jump him. Id. The encounter in that case occurred in a high school. This court ruled that defendant's testimony showed that he violated his duty to retreat * * *. Id. That is, he could have retreated before hitting the victim. Similarly, in the case at bar, defendant was in a public place, a shopping mall, and failed to retreat although he had the opportunity to do so.
{¶ 60} Furthermore, the court did consider his claim of self-defense. The trial court stated on the record,
 {¶ 61} * * * even if [the victim] was in part the instigator, I think that your response was far greater than it needed to be. Say, for example, I believe the testimony that you presented in that, is that you had turned, and you were walking away, and [the victim] came up, and he pushed you a couple of times. And your response of turning around and hitting him with such force as to cause whatever degree of damage you did, was more than necessary.
 {¶ 62} There were other options. * * * [T]his was not deadly force that you were called upon to use. But nonetheless, there were other options. And to come up with the roundhouse that you apparently did, even from your own witness' testimony, and strike with such force as to cause physical harm, that in my mind is enough to prove you delinquent on this charge.
{¶ 63} Tr. at 67. As the trial court explained,[2] even if defendant acted in self-defense, his response was seriously disproportionate to the actions of the victim, who merely pushed defendant a couple of times. The court could properly conclude that being pushed did not require defendant to accelerate the situation, that is, to blind side him with a punch of substantial force to his face. The trial court did not err in finding that defendant failed to prove that he merely acted in self-defense.
{¶ 64} Defendant's second argument, that the victim actually sustained his injuries in some other way after defendant hit him, is totally unsupported. Defendant postulates that the victim may have been in an auto accident on his way home or may have struck his face when he passed out at home. There is no evidence of damage to the victim's car, however, and the victim's mother stated that he landed on his back when he passed out.
{¶ 65} The direct evidence indisputably shows that defendant struck the victim in the face with enough force to knock him off his feet. At the time, a witness observed he was dazed and saw a trickle of blood from his nose. The evidence also shows that the time frame was consistent with the victim's injuries being a result of the blow from defendant. Because the victim was unobserved between the time he left the mall and the time his mother saw him at home, the court had to rely on circumstantial evidence to find that there was no intervening cause of the injuries. The Supreme Court of Ohio has held that when the state relies on circumstantial evidence to prove an element of the offense charged, there is no requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259, 273. Moreover, it takes a great leap to believe that injuries which occur solely to the head arose from a possible fall or car accident as defendant speculates, rather than from a punch which landed on the same part of the body which suffered extensive injuries.
{¶ 66} In every criminal case, the [trier of fact] is asked to weigh all of the admissible evidence, both circumstantial and direct, to determine if the defendant is guilty beyond a reasonable doubt. Hence, there is but one standard of proof in a criminal case, and that is proof of guilt beyond a reasonable doubt. Id. at 272. The State produced sufficient evidence to prove its case beyond a reasonable doubt, and the defendant presented no evidence to support his theory that the victim's injuries were a result of some other trauma. The trial court did not err in determining that the defendant's blow to the victim's face was the cause of his injuries. The trial court also did not err in determining that the defendant's actions were not self-defense.
The third assignment of error is overruled and the judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] The defense relied more on the medical records in its case than the state did. In its close, the defense claimed that the victim's injuries were too extensive to be the result of one punch. It also claimed that some of the injuries were inconsistent with injuries which would result from a punch. The defense also postulated that the victim was injured in the time between the punch and the time he reached the hospital. It cited no evidence to support this hypothesis, however.
[2] The trial court erred, however, in stating that defendant did not have a duty to retreat from less than deadly force. See State v. Stubblefield 2001 Ohio App. 2430, State v. Matthews 2001 Ohio App. 4931.